IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

O'REILLY AUTOMOTIVE, INC.           )

    Plaintiff,                             )

v.                                   )          CASE NO.:1-20-00395-TFM-C

UNIVERSITY OF SOUTH                 )
ALABAMA, by and through its
division USA HEALTH,                 )

    Defendant.                            )

## REPORT AND RECOMMENDATION

The motions to amend the complaint (Doc. 14) filed by O'Reilly Automotive, Inc. ("O'Reilly") and to dismiss the complaint (Doc. 6) filed by University of South Alabama, by and through its division USA Health, an Alabama corporation ("USA Health") have been referred for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). (See Docs. 13 and electronic referrals dated 10/21/2020 & 1/26/2021). After a review of the record, the briefs presented and with the benefit of oral argument held on October 6, 2020, it is determined that Defendant's motion to dismiss should be granted and Plaintiff's motion to amend denied as unnecessary. Alternatively, it is recommended that this action be stayed pending the outcome of the parallel state action pending in the Circuit Court of Mobile County, Alabama.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The facts in this action are not in dispute.[1] The Court is fully informed of the underlying facts given its consideration of the motions in a previously remanded action, 1:18-cv-500-TFM-C, the record in this action and the representations of the parties. (Doc. 14-1 at PageID.79 and Docs. 6 & 9).

On January 28, 2017, an employee of O'Reilly, Jonathan James Lytle ("Lytle") was admitted to one of USA Health's hospitals for care, treatment, and maintenance of injuries sustained in an automobile accident. Lytle was discharged on February 8, 2017 having incurred medical charges totaling $114,339.50. On February 16, 2017, USA Health perfected a hospital lien pursuant to Division 15, Article 5, Chapter 11 of Title 35 of the Code of Alabama.

Lytle had also received health benefits from a self-funded ERISA plan administered by his employer, O'Reilly. O'Reilly paid benefits under its ERISA plan – "Health Benefit Plan for Employees of O'Reilly Automotive, Inc. Limited Plan" ("the Plan"). O'Reilly has paid $127,750.47 in benefits under the Plan for medical expenses incurred by Lytle.

On December 21, 2017, USA Health commenced a lawsuit by filing a complaint in the Circuit Court of Mobile County, Alabama. (1:18-cv-500-TFM-C,

---

[1] *See* No. 1:18-cv-500-TFM-C (Doc. 51 at p. 1), in which O'Reilly states that it does not dispute the material facts presented by USA Health. See also No. 1:18-cv-500-TFM-C (Doc. 46 at p. 3), in which USA Health agrees that the issue presented to the Court is purely legal.

Doc. 1-1, PageID.17). The Defendants in that action, as originally filed, were Lytle, USAA General Indemnity Company ("USAA") and a number of fictitious parties. The Complaint contained four state-law claims: 1) impairment of a hospital lien, 2) open account, 3) account stated, and 4) breach of contract. (*Id*. at PageID.39).

On October 29, 2018, then-Defendant USAA filed its counterclaim, cross-claim, and third-party claims for interpleader pursuant to Rule 22, Alabama Rules of Civil Procedure.[2] (*Id*. at PageID.136-144). O'Reilly, USA Health and Lytle were all identified as "interpleader parties" based on their conflicting claims to uninsured motorist bodily injury coverage in the amount of $75,000. Memorial Hospital at Gulfport, in Gulfport, Mississippi ("Memorial Hospital") was also identified as a lien holder but was not named because all parties agreed to have that lien satisfied from a portion of the insurance proceeds.[3] USAA's claim against O'Reilly was designated as a third-party complaint in interpleader. USAA sought to deposit into

---

[2] "[T]he primary purpose of interpleader [is] to prevent multiple suits and possible double recovery of one liability." *Dick v. First Nat. Bank of Birmingham,* 334 So.2d 922, 926-927 (Ala. Civ. App. 1976), citing *Prat v. First Nat. Bank of Fayette*, 243 Ala. 257, 9 So.2d 744 (1942).

[3] USAA had also filed an interpleader action in a state court of Mississippi. That action was removed by O'Reilly to the United States District Court for the Southern District of Mississippi, Southern Division styled *USAA General Indemnity Company v. Lytle, et al.*, Case No. 1:17-cv-00361-LG-RHW. USAA and the other parties agreed to dismiss the Mississippi action without prejudice so that they could pursue the interpleader action in the Circuit Court of Mobile County, Alabama. A material part of this agreement was the payment of $1,000.00 of the insurance proceeds to Memorial Hospital, leaving a total of $74,000.00 left for distribution among the interpleader parties.

the Circuit Court, the remainder of the insurance proceeds, $74,000.00, and then be discharged from any further liability. (*Id*. at PageID.142).

O'Reilly removed the action pending in Mobile County on November 29, 2018 citing the Employee Retirement Income Security Act of 1974 ("ERISA") as the jurisdictional basis under 28 U.S.C. §§ 1331, 1441, and 1446. The sole question left to be resolved was the priority between USA Health and O'Reilly as to the interpled funds from USAA. (1:18-cv-500-TFM-C, Doc. 1 at PageID.1-6).

While the removed action was pending in this Court, and at the joint request of the parties, an order was entered that authorized the disbursement of a portion of the insurance proceeds by paying Lytle $38,881.85. This amount was later reduced by $8,000.00 on March 20, 2019 ((1:18-cv-500-TFM-C, Doc. 28). The remainder of the uninsured motorist proceeds were deposited into this Court by USAA and Lytle in two separate checks in the amounts of $35,118.15 and $8,000.00 respectively. (1:18-cv-500-TFM-C, Docs. 25, 29 & 32). Subsequently, USAA and Lytle were discharged and dismissed from the case on April 4, 2019. (*Id*., Docs. 38 & 39 at PageID.579-580).

On April 23, 2020, the Court raised the issue of subject matter jurisdiction, *sua sponte*. (*Id*., Doc. 57). After hearing from the parties and review of the case law, this action was remanded to the Circuit Court of Mobile County, Alabama on July 20, 2020. (*Id*., Doc. 66). The decision to remand was based on two findings: 1)

third party counterclaim defendants, like O'Reilly, may not remove a civil action under 28 U.S.C. § 1441(c) and 2) the claims presented by USA Health were not completely preempted, therefore jurisdiction had not been shown by O'Reilly.[4]

O'Reilly followed the order of remand by filing a new action against USA Health on August 7, 2020 (1:20-cv-00395-TFM-C, Doc. 1). This created the pendency of parallel actions, one pending in state court with a filing date of December 21, 2017, and one in federal court filed on August 7, 2020. The parallel actions involve the same parties, O'Reilly and USA Health, and involve a common goal, to resolve the conflicting claims over the funds now on deposit with the state court.

## II. DISCUSSION

### A. Motion to Dismiss.

USA Health submits seven reasons as to why the Complaint in this action should be dismissed: 1) diversity jurisdiction does not exist, 2) USA Health, as an agency of the State of Alabama is immune from suit, 3) this Court does not have jurisdiction over the interpled funds, 4) this Court lacks jurisdiction in the absence of a justiciable controversy, 5) by application of the first-filed rule, 6) federal jurisdiction has not been established in the absence of complete preemption, and 7) there are no

---

[4] After this order of remand was entered, on August 31, 2020, the Court also transferred the deposited insurance proceeds to the Circuit Court of Mobile County, Alabama. (*Id.*, Doc. 67). The amount transferred was $43,118.15.

compelling circumstances which would justify this Court's consideration of the sole remaining issue. (Doc. 6, PageID.24-32). Plaintiff responded to the motion to dismiss on September 3, 2020 but only discusses some of the reasons cited by USA Health for dismissal.[5] First, it argues that this is an equitable action only and "does not seek damages from USA [Health]." (Doc. 8, PageID.49). It's claim, "seeks only declaratory relief" and is not barred by sovereign immunity. *See United States v. 1461 W. 42nd St., Hialeah, Fla.*, 251 F.3d 1329, 1340 (11th Cir. 2001) (noting that, "claims for equitable relief… do not impinge upon sovereign immunity") (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988)).

Secondly, O'Reilly argues that the specific procedural background in this case "demonstrates the existence of an "actual case or controversy between O'Reilly and USA [Health]." (*Id*. at PageID.52). O'Reilly argues that "[t]his declaratory action realigns the parties so that there is no question as to ERISA's complete preemption over this substantial justiciable controversy, …." (*Id*.).

Third, it is argued that compelling circumstances justify the Court's consideration of the priority issue because a federal question is present: "whether an ERISA plan sponsor's subrogation lien is trumped by a state hospital lien." (*Id*.). While recognizing that O'Reilly's act of filing this action has created a parallel proceeding

---

[5] Counsel for O'Reilly admitted during oral argument that diversity jurisdiction is not applicable in this action.

with the interpleader action pending in state court, O'Reilly's position is that the "first-filed" rule should not deprive this Court of authority to resolve the dispute. O'Reilly then applies the factors established in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005), arguing that factors one, three, fifth, eighth and ninth weigh strongly in favor of this Court exercising jurisdiction. (*Id.* at PageID.53-55).

Finally, O'Reilly argues that complete preemption exists in this action even though that was not the finding of the Court in the previous action, 1:18-cv-500-TFM-C. While attempting to distinguish the case of *Butero v. Roayal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999) from the facts of this case, O'Reilly performs an analysis of those factors required by the Eleventh Circuit for establishing complete preemption and argues that all four factors are met in this action.

On September 9, 2020, USA Health filed a reply to O'Reilly's response and emphasized the following points:

- Plaintiff has failed to demonstrate that the sole claim in the Complaint is seeking the "appropriate equitable relief" required to establish jurisdiction in this action, citing *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*, 136 S. Ct. 651, 657 (2016);

- That the cases offered by Plaintiff in support of jurisdiction are all

distinguishable from this case;

- O'Reilly has ignored the finding by this Court in the removed action that an alternative basis for remand was the lack of subject matter jurisdiction; and

- O'Reilly fails to discuss the fact that this Court does not have jurisdiction over the insurance proceeds to which the parties in this action have conflicting claims.

### 1. Subject Matter Jurisdiction – Constitutional Standing.

USA Health moves for dismissal of this case on the ground that this Court lacks subject matter jurisdiction because there is no present case or controversy to adjudicate. There is no legal relationship between O'Reilly and USA Health and a claim for equitable relief has not been presented.

The analysis for deciding whether an actual case or controversy exists in an action seeking only equitable relief has been described by the Eleventh Circuit as follows:

> Article III of the Constitution limits federal courts to adjudicating actual "cases" and "controversies." *See, e.g., Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). The case-or-controversy requirement sets fundamental limits on federal judicial power. *Id.* "Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing." *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2001). Standing cannot be waived or conceded by the parties, and it may be raised (even by the court *sua sponte*) at any stage of the case. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541,

106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *Harris v. Evans*, 20 F.3d 1118, 1121 n.4 (11th Cir. 1994).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1264 (11th Cir. 2015) (same). "The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.,* 68 F.3d 409, 414 (11th Cir. 1995).

Echoing the "case or controversy" requirement of Article III, the Declaratory Judgment Act "provides that a declaratory judgment may only be issued in the case of an actual controversy." *See Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985) (citing 28 U.S.C. § 2201); *see also Atlanta Gas Light,* 68 F.3d at 414 ("In all cases arising under the Declaratory Judgment Act, ... the threshold question is whether a justiciable controversy exists."). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory,* 756 F.2d at 1552. The controversy between the parties cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a "substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999); *accord Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, ... the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.' ") (quoting *Malowney*, 193 F.3d at 1346). "Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, ... [the plaintiffs] must assert a reasonable expectation that the injury they have suffered will

continue or will be repeated in the future." *Malowney*, 193 F.3d at 1347; *see also id.* at 1348 ("Injury in the past ... does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."). Accordingly, if a plaintiff does not assert a reasonable expectation of future injury, he "lack[s] standing to bring an action for declaratory relief[.]" *See id.* at 1348.

See *A&M Gerber Chiropractic LLC v. GEICO General Insurance Company*, 925 F.3d 1205, 1210–11 (11th Cir. 2019).

O'Reilly has made clear in the proposed amended complaint that it is proceeding "pursuant to 29 U.S.C. § 1132(a)(3)" against USA Health for a "declaratory judgment pursuant to ERISA …, which seeks this Court's interpretation of the preemptive effect of the terms of an employee health benefit plan…." (Doc. 14-1, PageID.75). 28 U.S.C. §1132(a)(3) authorizes a civil action:

> "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates … the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision … the terms of the plan."

"'[T]he term "equitable relief" in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity ….'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 122 S.Ct. 708, 712, 534 U.S. 204, 210 (2002) (emphasis supplied) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L. Ed.2d 161 (1993)).

The sole count of O'Reilly's Complaint seeks a declaratory judgment determining that:

"(1) O'Reilly's equitable subrogation lien under ERISA has priority over USA Hospital's statutory hospital lien under Alabama law;

(2) O'Reilly is entitled to the entirety of the interpled funds in the amount of $43,118.15;

(3) O'Reilly is entitled to seek its attorneys' fees and other costs incurred in obtaining success on the merits in this declaratory action regarding its priority to the funds under § 29 U.S.C. § 1132(g)(1); and

(4) Any other and further relief this honorable Court deems appropriate and just under the circumstances." *Id*. at PageID.11-12.[6]

---

[6]    O'Reilly has filed a motion to amend the Complaint "for the purpose of clarifying the jurisdictional grounds upon which O'Reilly brings this action." (Doc.14, October 9, 2020). O'Reilly seeks to make clear that it is not seeking review pursuant to the Declaratory Judgment Act, but that its claim should be considered an "original action pursuant to ERISA." (*Id*. at PageID.71). This perceived need to clarify "jurisdictional grounds" is confusing since as a general rule the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, "does not independently confer upon this Court subject matter jurisdiction." *Rasheed v. Bank of New York Mellon*, 2014 WL 12860576, at *5 (N.D.Ga., 2014). In this Circuit, the relationship between subject matter jurisdiction and the DJA has been explained as follows:

> Article III, section two of the Constitution limits the exercise of judicial power to "cases" and "controversies." The declaratory judgment act, in its reference to "'cases of actual controversy' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Congress did not broaden the jurisdiction of the federal courts via the declaratory judgment act, but rather provided a new procedural device for handling controversies over which the courts already have jurisdiction. Id. at 240, 57 S.Ct. at 463; *First Federal Savings and Loan Ass'n of Lake Worth v. Brown,* 707 F.2d 1217, 1220 (11th Cir.1983). Thus, the declaratory judgment action "affects exclusively matters of practice, pleadings and forms and modes of proceedings." Borchard, *Declaratory Judgments* 231 (2d ed 1941). The Act does not affect requirements for the exercise of federal jurisdiction. *First Federal v. Brown,* 707 F.2d at 1220; *Seibert v. Baptist,* 594 F.2d 423, 428 (5th Cir.), *rev'd on other grounds,* 599 F.2d 743 (1979).

*Provident Life & Acc. Ins. Co. v. Transamerica-Occidental Life Ins. Co*., 850 F.2d 1489, 1490–91 (11th Cir.,1988); but see *Household Bank v. JFS Group*, 320 F.3d 1249, 1259 (11th Cir. 2003) ("a federal district court has subject-matter jurisdiction over a declaratory judgment action if, as here, a plaintiff's

Since standing is an integral part of the case or controversy anaylsis and must be determined at the time of the filing of the Plaintiff's complaint, an inquiry is made as to whether a justiciable controversy existed at that time. *A&M Gerber,* 925 F.3d at 1212. At the time of the filing of this Complaint, the legal issues had been reduced to one: "whether the equitable subrogation lien interest of an ERISA health care plan administrator, who seeks to recover from the tortfeasor for medical expenses it paid to treat its employee, is trumped buy a state hospital lien statute." (Doc. 14-1, PageID.76). This same issue is pending before the Circuit Court of Mobile County, Alabama in Civil Action No. 02-cv-2017-903314.

At the time this action was filed, however, the claim that O'Reilly had against its employee (Lytle) for reimbursement of money paid on his behalf pursuant to the Plan had been settled and no claim against Lytle existed at the time of filing. USAA, Lytle's insurance company, was not included in this action because it had paid all funds owed to Lytle. The proceeds due Lytle from USAA were disbursed in part to Memorial Hospital and Lytle with the remainder deposited with this Court by

well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law. No federal appellate court has reached a contrary conclusion.").

Since O'Reilly is clearly not trying to establish jurisdiction by asserting that USA Health's underlying state action would constitute a coercive action arising under federal law, this desire to abandon any reference to the Declaratory Judgment Act in order to clarify Plaintiff's jurisdictional basis for bringing an action seeking only declaratory relief appears unnecessary. The proposed Amended Complaint contains one count entitled "Declaratory Judgment" and is seeking the same relief demanded in the original Complaint. (*Id*. at PageID.83-85). USA Health has objected (Doc. 15) to the proposed amendment primarily on the basis that it may render its motion to dismiss moot.

agreement of all parties. The deposited funds were on deposit with this Court at the time of the filing of O'Reilly's complaint, but the complaint was filed only after this Court determined it lacked jurisdiction and remanded the action to the Circuit Court of Mobile County, Alabama. It does not appear that O'Reilly requested that the funds be retained in this Court at the time of the filing of the current complaint. Therefore, the interpled funds were transferred shortly after the filing of O'Reilly's complaint.

The undersigned has found it difficult to discern any action that O'Reilly has against USA Health, an entity that was not a party to the ERISA Plan. The only actions taken by USA Health was to provide medical care to Lytle and then attempt to collect from him and/or his insurer, the unpaid medical expenses through enforcement of a hospital lien in state court. O'Reilly has failed to specifically identify any injury by USA Health and the nature of any ongoing or future issues to be resolved. Additionally, USA Health does not have possession of the funds at issue nor have they ever had possession of those funds. The facts are that they were always within the custody and control of either USAA or the relevant courts. A legal doctrine that would ascribe possession to USA Health under these facts was not identified by O'Reilly.

The only problem identified with USA Health is that it has a competing claim to insurance proceeds that would be payable to Lytle but for the fact that he has

agreed to relinquish any claim to a portion of those proceeds. The only claim identified is a subrogation lien against USAA by O'Reilly given its contractual authority to stand in the shoes of its employee as per the ERISA Plan. Thus, O'Reilly has not identified a current claim against USA Health or a danger that it will incur future damages or injury should an injunction or declaratory judgment not be entered by this Court.

"The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.,* 68 F.3d 409, 414 (11th Cir. 1995). O'Reilly has failed to show that these factors exist in this case.

Additionally, it does not appear that all necessary parties have been included in this action in order to establish standing. Although the undersigned was unable to find ERISA cases that contain similar facts as this case, there are a line of cases involving failed attempts by insurers to have a court declare their respective rights under relevant insurance policies. The insurers were found to lack standing because they had failed to include the insureds as parties in declaratory judgment actions.

> "Courts have found the case or controversy requirement lacking when...there is no legal relationship between the parties." *Provident*

*Life & Accident Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988). … However, courts have recognized that a legal relationship exists between insurance companies seeking to determine the priority of insurance coverage as long as the insureds for the insurance policies are also joined in the lawsuit. See *id.* (stating that the failure to name the insured left no case or controversy to base jurisdiction upon in order to determine which of two insurance policies afforded coverage); *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp.3d 1268, 1281 (N.D. Fla. 2017)(stating that while courts have "case or controversy jurisdiction to consider claims between insurers and their insureds, absent some legal basis for an assertion of rights between two insurers, courts lack jurisdiction to adjudicate claims solely between the insurers"); *Progressive Express* [*Ins. Co. v. Overdrive Specialized, Inc.*,] 2014 WL 11512202, at *3 (N.D. Fla. Dec. 24, 2014) (quoting Provident Life and stating that "the Eleventh Circuit has stated that regardless of a lack of legal relationship between the insurers, 'a definite and substantial controversy' exists if the insured is also joined in the suit").

In *Provident Life*, one insurer brought a declaratory judgment claim against another insurer to determine which of the two insurers was liable for their shared insured's medical expenses. See *Provident Life*, 850 F.2d at 1489. On appeal, the appellate court found that the district court lacked jurisdiction to declare which insurer was liable, stating: [N]o legal relationship existed between the insurers. Had the insurers joined the insured in their action, a definite and substantial controversy would exist, as the declaratory judgment action would be to establish the rights and obligations between the insurers and the insured as evidenced in the insurance contract. *Id.* at 1493.

*Amerisure Insurance Company v. FCCI Insurance Company*, 2019 WL 1877311, at

*2–3 (M.D. Fla., 2019).  Similarly, while ERISA Plan administrators have case or

controversy jurisdiction to assert claims for reimbursement against participants or

beneficiaries to the Plan, that same jurisdiction has not been shown to exist when the

declaratory judgment action is brought solely against a medical care provider trying to assert its conflicting claim to tortfeasor funds deposited by a nonparty.

Therefore, USA Health is correct, at the time of the filing of this Complaint, there was no justiciable controversy because O'Reilly lacked standing to bring the declaratory action against USA Health. Without standing, Plaintiff has failed to show the existence of subject matter jurisdiction.

## 2. Subject Matter Jurisdiction - Statutory Standing.

Certainly, 29 U.S.C. § 1132(a)(3) "authorizes plan fiduciaries like [O'Reilly] to bring civil suits to obtain other appropriate equitable relief … to enforce …the terms of the plan." See *Montanile v. Board of Trustees of Nat. Elevator Industry Health Benefit Plan*, 136 S.Ct. 651, 657, 577 U.S. 136, 142 (2016) (internal quotation marks omitted). "The term equitable relief in the statute is limited, however, to 'those categories of relief that were *typically* available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate). (*Id.*) (emphasis supplied) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L. Ed.2d 161 (1993)). Deciding, however, whether a remedy sought by a particular plaintiff "is legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." *Sereboff v. Mid Atlantic Medical Services, Inc*., 547 U.S. 356, 363, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). The framework prescribed by the

Supreme Court to determine how to characterize the basis of a plaintiff's claim and the nature of the remedies sought is to examine treatises on equity, in order to establish the equitable relief that was typically available in premerger equity courts. *Montanile,* 136 S.Ct. at 657.

Turning to the present case, for O'Reilly to be able to pursue this federal action against USA Health, it is critical that the action be deemed as one seeking equitable relief only. It is important as a condition for the claim to be considered an appropriate action under 29 U.S.C. § 1132(a)(3) and for the additional purpose of avoiding a finding that as an agency of the State of Alabama, USA Health is immune from suit.

Plaintiff O'Reilly filed its Complaint on August 7, 2020 seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 against the Defendant University of South Alabama, by and through its division USA Health, an Alabama corporation. (Doc. 1 at PageID.1). More specifically, O'Reilly is pursuing a "declaratory judgment pursuant to the ERISA, 29 U.S.C. § 1001, which seeks "this Court's interpretation of the preemptive effect of the terms of an employee health benefit plan governed by ERISA over a state statutory hospital lien." *Id*.

This is the second time these same parties have presented with the same issue. The first action, *USA Hospital v. Lytle , et al*., 1:18-cv-500-TFM-C, was removed by O'Reilly from the Circuit Court of Mobile County into this Court on November

29, 2018. Although the previous action originally included O'Reilly's employee (Lytle) and Lytle's insurance carrier USAA, the claims against both of these parties were dismissed upon settlement after a portion of the settlement funds were deposited with the Court. With the agreement of the parties in this action and pursuant to the settlement agreement, Lytle was paid $30,881.85 in uninsured/underinsured benefits, $1,000.00 was paid to Memorial Hospital for medical care, and the remaining balance of the insurance proceeds, $43,118.15, was deposited with this Court. O'Reilly, as Lytle's employer and administrator of the ERISA plan, seeks a judgment for payment of the remaining insurance proceeds on a subrogation/reimbursement theory. USA Hospital, as a health care provider, claims entitlement to these same funds pursuant to a hospital lien filed under Alabama law. O'Reilly identifies its claim to the proceeds as an equitable subrogation lien pursuant to a self-funded benefit plan covered by ERISA, while USA Hospital asserts that it is entitled to the proceeds based on Alabama law, including a perfected hospital lien pursuant to Ala. Code § 35-11-370 (1975).

In the removed action, the Court raised, *sua sponte,* a subject matter jurisdictional issue, *i.e.*, whether the removing party had shown the existence of complete/super preemption. After hearing from the parties on this issue, the removed action was remanded to the Circuit Court of Mobile County, Alabama on the basis that O'Reilly as a third-party defendant lacked the authority to remove the action and secondly,

O'Reilly had failed to establish subject matter jurisdiction over the claim presented by USA Health to the remaining insurance proceeds.

Having failed to remove the state interpleader action into this Court, Plaintiff is now seeking, by filing a direct action against USA Health, to gain priority over a portion of insurance proceeds deposited in this Court initially and now on deposit in the Circuit Court of Mobile County, Alabama where the same parties are currently litigating the rights to those funds in a state interpleader action. USA Health, a medical care provider, is not a party to the ERISA Plan nor is it an ERISA entity. "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Morstein v. National Ins. Services, Inc.*, 93 F.3d 715, 722–23 (11th Cir. 1996). Thus, the equitable relief sought in this current federal suit is to obtain a declaratory judgment that the funds on deposit are payable to O'Reilly. It is not a contract action or an attempt to enforce a provision of the contract against one of the contracting parties. As such, it appears to fall in the category of an *in rem* or *quasi in rem* action rather than an attempt to sue USA Health for damages. Although, one may debate whether interpleader actions are *in rem* or *in personam*, it is clear that the principal goal of the litigation is to obtain payment of the interpled funds.

It is the undersigned's opinion that O'Reilly, who bears the burden, has failed to clearly show how this action against USA Health is equitable in nature or that the relief it seeks is equitable as opposed to legal. This is particularly true because there

has been no showing that the defendant has ever possessed the funds at issue. Also lacking, is a reference to any specific equitable principle that would establish possession of the funds by USA Health. Thus, the general rule applies and this attempt to gain access to the insurance proceeds is deemed legal in nature. See *Montanile v. Board of Trustees of Nat. Elevator Industry Health Benefit Plan*, 136 S.Ct. 651, 660, fn. 3, 577 U.S. 136, 148 (2016) ("But CIGNA [Corp*. v. Amara,* 563 U.S. 421, 439, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011)] reaffirmed that traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were particular funds or property in the defendant's possession.").

### 3. Subject Matter Jurisdiction - Complete Preemption.

To start, it is noted that this Court has found that O'Reilly has not shown complete preemption based on the same set of facts, albeit in a removed action. (1: 18-cv-500-TFM-C, Doc. 66, PageID.898-902). It was determined that the facts supported a defensive preemption theory, not complete preemption. The undersigned does not find that the fact that O'Reilly is now proceeding as a plaintiff in a direct action against the health care provider, a non-participant, who has no relationship with O'Reilly or the Plan and does not have possession of the interpled funds, changes that analysis. Rather, it is found that this is a case of defensive preemption that may be asserted in the state interpleader action.

O'Reilly was a third-party defendant in the state action and could not remove the action based on ERISA preemption. "As a second basis for remand, separate from the status as a third-party defendant," the Court found that the ERISA preemption issue raised by O'Reilly was defensive in nature as opposed to showing that USA Health's state law lien was completely preempted by ERISA. (*Id*., Doc. 66, at PageID.898). The Court's conclusion on this point was unambiguous, to-wit: "In reviewing the briefs submitted by the parties, despite the continued representation by O'Reilly that 'complete preemption exists,' the Court finds rather that the matter falls under 'defensive preemption.'" (*Id.* at PageID.900).

The recasting of the parties in an action seeking a declaratory judgment that O'Reilly is entitled to the same insurance proceeds based on a theory that ERISA completely preempts the state law relied upon by USA Health does not present a distinguishable legal theory. The previous ruling that the doctrine of complete preemption does not apply to these facts is equally valid in this new action.

Secondly, even assuming that this newly filed action is somehow distinguishable from the remanded action on the issue of complete preemption, O'Reilly has not established to the undersigned's satisfaction that complete preemption exists based on the parties involved, their respective interests to the deposited insurance proceeds and the nature of the action being pursued by O'Reilly.

Even assuming, without deciding, that O'Reilly as an employer/administrator of a self-funded ERISA plan may obtain appropriate equitable relief to enforce the terms of the plan pursuant to 29 U.S.C.A. 1132(a)(3), the question remains as to whether the current claim is equitable in nature.

Pursuant to the undersigned's review, several factors support a finding that the claim is not equitable in nature. First, it is clear that the employee of O'Reilly (Lytle) does not currently have possession of that portion of the insurance proceeds deposited into the state court. Plaintiff agreed that Lytle was to be paid a portion of the proceeds and dismissed from the removed action. The remaining proceeds were never in his actual possession but deposited with this Court by his insurer. Secondly, Plaintiff agreed to payment of a portion of the insurance proceeds to a non-party health care provider. And finally, the remaining proceeds have been deposited with the state court that has jurisdiction over what is an ongoing parallel state interpleader action. The only remaining parties are O'Reilly and USA Health solely because they have competing claims to proceeds deposited by USAA. No showing or discussion was presented by O'Reilly that would tend to show that its current action is equitable in nature as opposed to an action at law to recover funds that would have otherwise been paid to Lytle but for the claims for reimbursement by O'Reilly and the attempted enforcement of a lien by USA Health.

In addition, as discussed above, one of the elements necessary for complete preemption to exist is missing in this action. Namely, is O'Reilly's equitable claim against USA Health available pursuant to ERISA?. The Supreme Court has established a two-part test for complete preemption under ERISA's remedy provision. "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)[(3)], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)([3])]." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004); *Conn. State Dental Assoc. v. Anthem,* 591 F.3d 1337, 1345 (11th Cir. 2009). Without such a showing, complete preemption does not apply, and the Court is without jurisdiction.

In this case, the defendant is an instrumentality of the State of Alabama asserting a state-created lien for hospital care provided to O'Reilly's employee. While O'Reilly attempts to have USA Hospital assume the role of its employee beneficiary, legal precedent for this assertion has not been provided and is therefore rejected. (See Doc. 8, PageID.57) ("USA Hospital stands in the shoes of Plan beneficiary, Jonathan Lytle, and as such USA Hospital is an ERISA entity for purposes of this subrogation claim; …"). This brief attempt to establish a claim against an ERISA entity is important since there is no legal basis to pursue an action against USA Health otherwise.

USA Health has not sought to enforce any rights held by Lytle related to the plan, instead it sought to enforce a statutory lien against Lytle. It has never possessed any of the insurance proceeds claimed by Lytle. In fact, Lytle abandoned, prior to this suit being filed, all claims to this remnant of the insurance proceeds available to him and is not a party to this action or the action pending in state court. Accordingly, the first *Davila* factor for purposes of establishing complete preemption is missing.[7]

### 4. Abstention Doctrine.

Alternatively, even if the Court should disagree with the multi-faceted discussion of subject matter jurisdiction, given the posture of the parallel actions, it maintains discretionary authority over whether and when to entertain this action seeking equitable relief in the form of a declaratory judgment under ERISA. District courts have "substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings." *Wilton v Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judgment." *Id.*

---

[7] O'Reilly settled with its employee in the remanded action and he was dismissed as was the insurance company that deposited the funds at issue. Thus, the funds are not in the possession of the beneficiary of the plan but have always been in the custody of the courts in which the action was and is pending. USA Health is not making a claim to the funds under the ERISA plan but have a state-created lien for the care provided to Lytle regardless of the terms of the ERISA plan or the relationship between employer and employee. The undersigned has not been presented with a case in which a court has ruled that an ERISA action is available against a similar defendant.

Should the Court find that subject matter jurisdiction does exist in this action, it should exercise its broad discretion to dismiss this action under the *Brillhart-Wilton* abstention doctrine as argued by USA Health.  Regardless of how O'Reilly tries to identify the statutory authority for bringing this action, the all too clear underlying goal is to gain priority over the interpled funds.  In the undersigned's opinion, the facts of this case implicate the Court's discretion to abstain from interfering with a parallel state proceeding, especially when that proceeding involves litigating the priority of competing claims to funds that are now within the jurisdiction of the state tribunal.  Even though the Plaintiff asserts its claim under the statutory authority of ERISA, as opposed to the Declaratory Judgment Act, the policy concerns, expressed by the Eleventh Circuit when deciding whether to entertain a declaratory judgment action during the pendency of a first-filed parallel state proceeding, are applicable.

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton[ v. Seven Falls Co.*], 515 U.S. [277,] 287, 115 S. Ct. 2137[, 132 L. Ed. 2d 214 (1995) ] (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942). In fact, ... the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S. Ct. 1173. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.
> Guided by the[ ] general principles expressed by the Supreme Court, as well as the same considerations of federalism, efficiency, and comity

that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts, [the Eleventh Circuit Court of Appeals has] provide[d] the following factors for consideration to aid district courts in balancing state and federal interests.

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

[This] list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton.*

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005)

(per curiam) (footnotes and some quotation marks omitted).

Factors 1, 2, 4, and 5 identified by the Eleventh Circuit in *Ameritas* clearly

weigh in favor of abstention so that the issue in this case may be decided by the

Circuit Court of Mobile County. The first *Ameritas* factor concerns "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." 411 F.3d at 1331. The Alabama state court has a substantial interest in deciding the issues raised in this lawsuit. USA Health's claim to the proceeds deposited in the state court is based on state law claims, including a state statute. Thus, the litigation was prompted by and may be controlled by state law. It is true that O'Reilly has defended by raising, what this Court has found to be, a defensive preemption claim controlled by federal law but over which the state court has jurisdiction to resolve. Additionally, the contested insurance proceeds are within the jurisdiction of the state court. This element favors abstention.

The second *Ameritas* factor asks the question of "whether the judgment in the federal declaratory action would settle the controversy?" (*Id.*) The answer to this question is no. Although this Court could certainly determine the priority of claims, it would not have jurisdiction over the funds. Any order from this Court as to the ownership and distribution of the funds would need to be enforced in the state court proceedings. It seems far more practical and efficient to require O'Reilly to present its defensive preemption argument in state court and have this issue finally resolved there.

Third, this action does appear to be a case of "procedural fencing"- that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case

otherwise not removable. O'Reilly tried removal first and filed this action only after remand was ordered. The same preemptive authority may be asserted in both courts. So, this action is an attempt to have a federal court decide the issue first. This is clear from O'Reilly's reference to the fact that summary judgment had been preliminarily decided in its favor prior to the finding of improper removal coupled with a finding that complete preemption was not shown.

And finally, this case presents a clear danger to increasing the friction between federal and state relations. Any decision by this Court, if made prior to a decision by the state court, would need to be enforced in the Circuit Court of Mobile County, Alabama. Thus, a decision by this Court, should it resolve the issue first, would not end the litigation. Additionally, if the two courts were to reach different conclusions, the federal decision would take priority and potentially do damage to the principles of federalism.[8]

Even if there is a decision that this Court has subject matter jurisdiction, considerations of practicality and wise judicial administration advise strongly against weighing in on a matter previously filed and pending in the state court. *See*

---

[8] Although not presented and discussed expressly by the parties, there is a question of whether the doctrine of "prior exclusive jurisdiction" should apply. The doctrine of prior exclusive jurisdiction applies in two circumstances. The one most common, and possibly applicable here, is when there are multiple proceedings in which different courts are attempting to assert jurisdiction over the same property at the same time. *See United States v. Bank of N.Y. & Trust Co.*, 296 U.S. 463, 480-81 (1936) (holding first-filed state cases took precedence over later-filed federal cases); *Penn Gen. Cas. Co. v. Commonwealth of Penn. ex rel. Schnader*, 294 U.S. 189, 197 (1935) (holding federal court had jurisdiction over first-filed federal suit).

*Stevens v. Osuna*, 877 F.3d 1293, 1311 (11th Cir. 2017) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.") (citation omitted).

### III. CONCLUSION

For all the reasons discussed herein, it is recommended that:

1. Defendant's motion to dismiss be GRANTED for lack of subject matter jurisdiction;

2. Alternatively, should the Court find that subject matter jurisdiction (complete preemption) does exist given the manner in which O'Reilly is now presenting it claim to interpled insurance proceeds, it is recommended that the Court abstain pending resolution of the interpleader action pending in the Circuit Court of Mobile County, Alabama; and

3. That Plaintiff's motion to amend the Complaint be DENIED as moot if subject matter jurisdiction is found lacking or otherwise STAYED if the Court finds jurisdiction exists but decides to abstain.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file

specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 23rd day of February 2021.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**